**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JAMES T. GIBBONE, II,       :

                            : Civil No. 05-2225 (FLW)

         Plaintiff,      :

                            :

       v.             :

                            : **O P I N I O N**

JOHN D'AMICO, JR., et al.,    :

                            :

         Defendants.     :

_____:

**APPEARANCES:**

    JAMES T. GIBBONE, II, Plaintiff, <u>pro</u> <u>se</u>
    # 244962 SBI 757658B
    South Woods State Prison
    215 Burlington Road South
    P.O. Box 6000
    Bridgeton, New Jersey 08302

**WOLFSON**, District Judge

    Plaintiff, James T. Gibbone, II ("Gibbone"), confined at the South Woods State Prison in Bridgeton, New Jersey at the time he submitted this Complaint for filing, and recently deceased on or about July 25, 2005,[1] seeks to bring this action <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915. Based on plaintiff's affidavit of indigence and his prison account statements, it

---

    [1] The Court learned of plaintiff's death after mail sent by the Clerk's Office was returned and a telephone inquiry by this Court's staff with the South Woods State Prison confirmed that plaintiff had died on or about July 25, 2005. This information is corroborated at <u>https://www6.state.nj.us/DOC_Inmate/details</u>, which is the Offender Search Web Page of the New Jersey Department of Corrections.

appears that plaintiff is qualified to proceed as an indigent. Therefore, the Court will grant plaintiff's application to proceed in forma pauperis and direct the Clerk of the Court to file the Complaint without pre-payment of the filing fee.

Having reviewed the Complaint to identify cognizable claims pursuant to 28 U.S.C. § 1915(e)(2), the Court concludes that the Complaint for damages may proceed in part; however, the claim for injunctive relief directing defendants to schedule a parole eligibility hearing is rendered moot by plaintiff's death.

## I.  BACKGROUND

Gibbone filed this civil rights action under 42 U.S.C. § 1983 as against the following defendants: John D'Amico, Jr., Chairman of the New Jersey State Parole Board (hereinafter, the "Board"), and fictitious John and Jane Does 1-20, employees and/or agents of the Board or the New Jersey Department of Corrections (hereinafter, the "DOC"). (Complaint, Caption, ¶¶ 3-5).  The following factual allegations are taken from the Complaint and are accepted as true for purposes of this review.

Gibbone was convicted of aggravated manslaughter and was sentenced to a 30-year prison term with a 10-year parole disqualifier on June 26, 1992.  He received 352 days of jail credits, which allegedly made his first parole eligibility date on or about July 9, 2001.  (Compl., ¶¶ 7, 8).

It appears that Gibbone was determined ineligible for parole in 2001, although the Complaint does not actually make this allegation.  The Complaint does state that Gibbone had a new parole eligibility date on or about March 8, 2005.  In October 2004, Gibbone was informed that he would soon have a parole eligibility hearing.  The hearing was initially scheduled for January 8, 2005, but was postponed without plaintiff's consent. Gibbone contends that rescheduled hearings of January 22, 2005 and February 8, 2005 also were postponed without his consent. (Compl., ¶¶ 9-13).

Gibbone complained about these postponements to defendant D'Amico by certified letter, which was received by D'Amico's office on February 24, 2005.  Gibbone submitted this Complaint for filing on or about March 17, 2005.  At that time, there was no corrective action taken on his complaint to D'Amico, nor was Gibbone rescheduled for a parole eligibility hearing before he filed this Complaint.  (Compl., ¶¶ 15-17).

The Complaint alleges that the defendants "deliberately and capriciously conspired" to deprive plaintiff of his constitutional right to due process, equal protection, access to a tribunal and parole, a fair and impartial hearing, and cruel and unusual punishment.  (Compl., ¶¶ 22-29).  The Complaint seeks a declaratory judgment that Gibbone's constitutional rights were violated by defendants, and injunctive relief directing

3

defendants to conduct a fair and impartial parole eligibility hearing.  The Complaint also asks for compensatory damages in the amount of $50,000.00 and punitive damages in the amount of $10,000.00.  (Complaint, "Relief").

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.[2]

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the

---

[2]  The PLRA also requires the courts to determine whether a prisoner has, on three or more prior occasions while incarcerated or detained in any facility, brought an action or appeal in federal court that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted.  If so, the prisoner is precluded from bringing an action in forma pauperis unless he or she is under imminent danger of serious physical injury.  28 U.S.C. § 1915(g).  It appears that Gibbone incurred two strikes to date under 28 U.S.C. § 1915(g).  See Gibbone v. Terhune, et al., Civil No. 99-4341 (SMO)(dismissed for failure to state a claim); Gibbone v. Paparozzi, et al., Civil No. 03-1153 (RBK)(dismissed under 28 U.S.C. § 1915(e)(2)).

4

plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

### III.  SECTION 1983 LIABILITY

The Complaint asserts an action under 42 U.S.C. § 1983, alleging violations of plaintiff's constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV.   ANALYSIS

There is no federal constitutional right to parole; states, however, may create a parole entitlement protected by the Due Process Clause.  See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979).  See also Board of Pardons v. Allen, 482 U.S. 369 (1987); Prevard v. Fauver, 47 F. Supp.2d 539, 545 (D.N.J.), aff'd, 202 F.3d 254 (3d Cir. 1999).

Both federal and state courts have held that the New Jersey parole statute contains language creating an expectation of parole eligibility entitled to some measure of due process protections.  See Williams v. New Jersey State Parole Board, 1992 WL 32329, *2 (D.N.J. Feb. 4, 1992), aff'd, 975 F.2d 1553 (3d Cir. 1992); New Jersey State Parole Board v. Byrne, 93 N.J. 192, 203 (1983).  Judge Lifland of this Court has held that these cases remain good law even after taking into account the rule announced by the Supreme Court in Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted), that liberty interests created by state law "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  See Watson v. DiSabato, 933 F. Supp. 390, 392-93 (D.N.J. 1996) (prisoner has liberty interest in parole decisions,

including notice of determination, statement by the government, and opportunity for prisoner to submit written response).

The question remains what process is due.  The Supreme Court of New Jersey has stated that

> Only a few basic procedures are required to deal with the risks of erroneous or arbitrary determinations in this context.  We conclude that the process required is notice of the pendency of the parole disposition, a statement by the objecting judge or prosecutor of the reasons why the punitive aspects of the sentence have not been fulfilled, and the opportunity for the prisoner to respond in writing to that statement of reasons.  No hearing, confrontation, or counsel issues are implicated here.

Byrne, 93 N.J. at 211.

However, Judge Thompson of this Court has held that due process does not require that a hearing be held in exact accordance with the time period specified by the applicable New Jersey statutes.  See Burgos v. New Jersey State Parole Board, 2000 WL 33722126, *8 (D.N.J. Aug. 7, 2000).  While delay for an extended period of time may violate a prisoner's due process rights, "procedural errors are generally cured by holding a new hearing in compliance with due process requirements."  Id. at *8-9.  See also Johnson v. Paparozzi, 219 F. Supp.2d 635, 642 (D.N.J. 2002).

This is not to say that every allegation of constitutional violations in parole proceedings is the proper subject for an action under § 1983.  In a series of cases beginning with Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court has analyzed

the intersection of 42 U.S.C. § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.  In Preiser, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate release.  411 U.S. at 476. The prisoners did not seek compensatory damages for the loss of their credits.  411 U.S. at 494.  The Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  Id. at 500.

     In Heck v. Humphrey, 512 U.S. 477 (1994), the Court addressed a corollary question to that presented in Preiser, whether a prisoner could challenge the constitutionality of his conviction in a suit for damages only under § 1983, a form of relief not available through a habeas corpus proceeding.  Again, the Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

          [I]n order to recover damages for allegedly
          unconstitutional conviction or imprisonment, or for
          other harm caused by actions whose unlawfulness would
          render a conviction or sentence invalid, a § 1983
          plaintiff must prove that the conviction or sentence
          has been reversed on direct appeal, expunged by

8

> executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into
> question by a federal court's issuance of a writ of
> habeas corpus, 28 U.S.C. § 2254.  A claim for damages
> bearing that relationship to a conviction or sentence
> that has <u>not</u> been so invalidated is not cognizable
> under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further

instructed district courts, in determining whether a complaint

states a claim under § 1983, to evaluate whether a favorable

outcome would necessarily imply the invalidity of a criminal

judgment.

> Thus, when a state prisoner seeks damages in a § 1983
> suit, the district court must consider whether a
> judgment in favor of the plaintiff would necessarily
> imply the invalidity of his conviction or sentence; if
> it would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.  But if the
> district court determines that the plaintiff's action,
> even if successful, will <u>not</u> demonstrate the invalidity
> of any outstanding criminal judgment against the
> plaintiff, the action should be allowed to proceed, in
> the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court held that "a §

1983 cause of action for damages attributable to an

unconstitutional conviction or sentence does not accrue until the

conviction or sentence has been invalidated."  <u>Id.</u> at 489-90.

More recently, in <u>Edwards v. Balisok</u>, 510 U.S. 641 (1997),

the Supreme Court applied the lessons of <u>Preiser</u> and <u>Heck</u> to a

state prisoner action, seeking compensatory and punitive damages,

challenging the constitutionality of procedures used in a prison

disciplinary proceeding that resulted in the loss of good-time

credits, but not necessarily challenging the result and not seeking the restoration of the good-time credits.  Again, the Court emphasized that such a claim is not cognizable under § 1983 if a favorable outcome would necessarily imply the invalidity of the challenged judgment, there the disciplinary finding and punishment.  520 U.S. at 646-8.  See also Benson v. New Jersey State Parole Board, 947 F. Supp. 827 (D.N.J. 1996).  In Benson, petitioner sought both a writ of habeas corpus and declaratory relief and punitive damages under § 1983 for allegations that he had been denied a timely parole hearing, and that his parole eligibility date had been miscalculated.  Id. at 828.  The Court held that a decision in Benson's favor would "necessarily entail a determination of Benson's proper initial parole eligibility date."  Id. at 832.  Further, the Court determined that Benson's suit was an attack on the duration of confinement because he sought to "correct" his parole eligibility records by way of declaratory judgment.  See id. (citations omitted).  Because Benson ultimately sought an earlier parole eligibility date, his claims were reviewable by habeas petition only.  See id. (citation omitted).

Thus, when a dispute "goes only to the manner in which the Board has considered plaintiff's parole, and [when] plaintiff does not claim that the review process must actually lead to his parole or to an earlier parole eligibility date, plaintiff's

10

claim may proceed under 42 U.S.C. § 1983." <u>Johnson v. Fauver</u>,
786 F.Supp. 442, 445 (D.N.J.) (emphasis added), <u>aff'd</u>, 970 F.2d
899 (3d Cir. 1992); <u>see also</u> <u>Georgevich v. Strauss</u>, 772 F.2d
1078, 1086 (3d Cir. 1985), <u>cert. denied</u>, 475 U.S. 1028 (1986)
(suit properly brought under § 1983 when it sought <u>only</u> the equal
application of statutory furlough eligibility criteria, not
plaintiff's release from incarceration); <u>Salaam v. Consovoy</u>, No.
99-cv-5692, 2000 WL 33679670, *2 (D.N.J. April 14, 2000) (a claim
properly may be brought as a § 1983 action when the plaintiff is
neither seeking an earlier parole eligibility date, nor
challenging the parole board's calculation of his eligibility
date).

        Here Gibbone is not seeking an earlier parole eligibility
date ("PED"), but rather complains that there has been a delay of
his parole eligibility hearing beyond his PED.  The Court notes
that the alleged delay in rescheduling Gibbone's hearing was not
excessive and the request for injunctive relief could easily be
cured by holding a hearing, if not for plaintiff's untimely
death.  <u>See</u> <u>Burgos</u>, 2000 WL 33722126, *8.  Thus, to the extent
that the Complaint seeks such declaratory and injunctive relief,
the claim must be dismissed as moot due to Gibbone's death.

        Nevertheless, Gibbone's claim for damages based on the
allegation that the delay in his parole eligibility hearing
violated his due process rights does state a claim sufficient to

11

avoid dismissal at this preliminary <u>sua</u> <u>sponte</u> review under §§
1915(e)(2) and 1915A, as the Complaint does not allege a dispute
as to Gibbone's actual parole eligibility date or that he is
entitled to release on parole.  Rather, the claim seeks damages
based on the alleged due process violation by defendants in
failing to schedule a timely parole hearing.  While the issue of
damages may be difficult to prove in this case, especially in
light of Gibbone's death, this Court acknowledges that a
plaintiff who brings a successful § 1983 action based on a due
process violation may be entitled to nominal damages even if
there is no proof of actual injury.  <u>Carey v. Piphus</u>, 435 U.S.
247, 266-67 (1978).  Accordingly, the Court will allow the
Complaint to proceed with respect to the damages claim asserting
denial of due process.

## V.   <u>CONCLUSION</u>

     For the reasons set forth above, the damages claim
challenging the defendants' failure to provide a timely initial
parole eligibility hearing will be permitted to proceed.  The
Court will grant leave to the successors or representatives of
the plaintiff-decedent's estate to file a proper substitution of
party, pursuant to Fed.R.Civ.P. 25(a)(1), within 90 days from the
date of plaintiff's death.  If a motion for substitution is not
made within this time period, the action shall be dismissed in

its entirety, and the file closed accordingly.  An appropriate

order follows.

_____
S/Freda L. Wolfson
FREDA L. WOLFSON
United States District Judge

DATED: August 15, 2005